IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MAZIAR MOSBERIAN TANHA,** | |
| **Petitioner,** | |
| v. | Civil No.: 1:25-cv-02121-JRR |
| **WARDEN, Baltimore Detention Facility,** *et al.*, | |
| **Respondents.** | |

## **MEMORANUM OPINION AND ORDER**

Pending now before the court is Petitioner Maziar Mosberian Tanha's Petition for Writ of Habeas Corpus (ECF No. 1; the "Petition") as well as Respondents'[1] Motion to Dismiss or Stay (filed with their response to the Petition at ECF No. 14; the "Motion"). Following expedited briefing by the parties, the court convened a hearing on the Motion on July 21, 2025.

**I.    Factual and Procedural Background**

The record indicates as follows: Petitioner was born in Iran and came to the United States on October 5, 2010, on a non-immigrant B1 visa. (ECF Nos. 1 ¶ 1, 1-1, Employment Authorization card noting country of birth as Iran, 18 at p. 4.)[2] He subsequently sought, and was denied, asylum in the U.S. based upon past persecution by authorities in the Islamic Republic of Iran. (ECF No. 1 ¶ 1.) Following initiation of removal proceedings and traversing the Board of Immigration Appeals ("BIA") process (which included Petitioner's request for reconsideration of the denial of asylum), Petitioner's case was remanded to the immigration court. In December 2016, an Immigration Judge ("IJ") issued an order that Petitioner be removed from the U.S. along with a

---

[1] Respondents are referred to herein collectively as the "Government."
[2] The Petition alleges Petitioner came to the U.S. "on a tourist visa" (a B2 visa). (ECF No. 1 ¶ 1.) This distinction is immaterial for purposes of the Petition and the court's evaluation of same.

withholding of removal order (the "Withholding of Removal") directing that he not be removed to Iran.[3] The IJ's order does not designate a country (or countries) to which Petitioner could be removed; and no evidence has been submitted that any immigration judge designated a country to which Petitioner could be removed. (ECF Nos. 1 ¶ 2, 1-2, 14-2.) Upon receiving the Withholding of Removal, Petitioner withdrew his asylum application (ECF No. 14-2), and was released on an Order of Supervision ("OSUP"). (*See* ECF No. 1 ¶ 4.) Petitioner contends he has complied with all supervision terms and conditions of U.S. Immigration & Customs Enforcement ("ICE") since issuance of his Withholding of Removal. *Id.* The Government does not challenge that Petitioner complied with the conditions of his OSUP.

On July 1, 2025, ICE officers detained Petitioner in the ICE Hold Rooms in Baltimore, Maryland (*id.* ¶¶ 4–5), and served Petitioner with a Notice of Revocation of Release and Notices of Removal to Pakistan, Turkey, and Qatar (notifying Petitioner that he is to be removed to one of these three countries alternative to Iran). (ECF Nos. 14-3–14-6.) The Notices of Removal indicate that they were read to Petitioner in the English language[4] and that he declined to sign them to indicate notice/receipt. (ECF Nos. 14-3–14-6.) The Notice of Revocation of Release includes the instruction that Petitioner was to remain in ICE custody pursuant to 8 C.F.R. § 241.4 and that he would "promptly be afforded an informal interview" to respond to the "reasons for the revocation."

---

[3] The Government's papers set forth a more detailed recitation of events, including the following: on February 15, 2011, Petitioner was served with a Notice to Appear for the purposes of initiating removal proceedings; on February 12, 2012, Petitioner was ordered removed to Iran; Petitioner appealed his order of removal in March 2012 and the appeal was dismissed by the BIA on September 30, 2012; on December 24, 2013, Petitioner filed a motion to reopen his immigration proceedings with the BIA, which in turn remanded the case to the immigration court; the immigration court reconsidered its previous determinations regarding asylum, withholding of removal, and deferral of removal per the Convention Against Torture, all of which resulted in issuance of the December 2016 order that Petitioner be removed from the U.S. and withholding his removal to Iran. Petitioner does not challenge these facts.

[4] At the hearing, on inquiry from the court as to whether Petitioner speaks and reads the English language, counsel for Petitioner advised that she speaks to him in Farsi and does not know whether Petitioner reads or speaks the English language. Nonetheless, neither the Petition nor Petitioner's reply papers challenge the sufficiency of the Notices of Removal on the basis that Petitioner was unable to understand them due to a language barrier or for any other reason.

(ECF No. 14-3.)[5] It further provides that, if Petitioner is not released after the informal interview, he "will receive notification of a new review, which will occur within approximately three months of the date of this notice." *Id.* That same day, Petitioner also received a Warrant of Removal/Deportation (also called a Form I-205) pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") (8 U.S.C § 1227(a)(1)(B)). (ECF No. 14-7.)[6]

Also on July 1, 2025, Petitioner filed the instant Petition. In it, he asserts that his "return to Iran or a third country without a full hearing to determine his credible fear of return to a county that is currently an Islamic dictatorship" would "surely" cause him to suffer. (ECF No. 1 ¶ 6.) The Petition contains one count titled "Violation of the Due Process Clause of the Fifth Amendment." *Id.* ¶¶ 24-29. Petitioner challenges his detention as a violation of the INA and the Due Process Clause of the Fifth Amendment to the United States Constitution, specifically because, he contends, "[t]he procedures employed by [the Government] offered Petitioner no hearing, no notice, and no opportunity to be heard." (*Id.* ¶ 29.) As for relief, Petitioner seeks a writ of habeas corpus, declarations that his detention is unlawful under the INA and the Due Process Clause, an order that the Government release him from detention, and an award of reasonable attorneys' fees per the Equal Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412. *Id.* at p. 6. Petitioner was detained by ICE in Baltimore at the time he filed the Petition (*id.* ¶ 4); he has since been relocated and is currently detained by ICE at the Winn Correction Center in Winnfield, Louisiana.[7]

---

[5] Petitioner's Reply avers that as of July 14, 2025, "based on discussion with counsel, Petitioner has expressed that no such interview has been scheduled." (ECF No. 18 at p. 5.)

[6] The Government erroneously states that the Form I-205 "indicates the statutory authority of the Immigration and Nationality Act for the removal (8 U.S.C. § 1227(a)(2)(B) — deportable aliens- unlawful presence in the United States) . . . ." (ECF No. 14-1 at p. 5.) The Form I-205 cites section 237(a)(1)(B) of the INA, which is codified at 8 U.S.C. § 1227(a)(1)(B).

[7] The court thus concludes that it has proper jurisdiction over this action. Further, as confirmed at the on-record teleconference held July 2, 2025 (ECF No. 5), the Government agrees the Petition was filed when Petitioner was in ICE detention in Baltimore, Maryland.

To provide greater context to the instant Petition, the court notes that on March 30, 2025, Kristi Noem, Secretary of Homeland Security ("DHS"), issued guidance (the "DHS Guidance") on third country removals to the U.S. Citizenship and Immigration Services ("USCIS"), U.S. Customs and Border Protection ("CBP"), and ICE. (ECF No. 14-8.) The DHS Guidance memorandum "clarifies DHS policy regarding the removal of aliens with final orders of removal pursuant to sections 240, 241(a)(5), or 238(b) of the INA to countries other than those designated for removal" in the respective removal orders; these are referred to as "third country removals." *Id.* In the event the third county has "provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured," and the Department of State deems those assurances credible, the non-citizen "may be removed without need for further procedures." *Id.* In the event a non-citizen "affirmatively states a fear," USCIS will conduct a screening within 24 hours of the referral and determine whether the non-citizen "would more likely than not be persecuted on a statutorily protected ground or tortured" if removed to the third country. *Id.* "If USCIS determines that the alien has not met this standard, the alien will be removed." *Id.*

Also relevant to this action (and a material basis of the Government's Motion), on April 18, 2025, the District of Massachusetts issued a preliminary injunction after finding, in part, that the procedures in the DHS Guidance did not satisfy due process, explaining:

> The March Guidance provides no process whatsoever to individuals whom DHS plans to remove to a country from which the United States has received blanket diplomatic assurances. Dkt. 43-1 at 1–2. Defendants are, of course, correct that the Court may not question the substance of diplomatic assurances endorsed by the Executive. *See* PI Opp. at 11. However, the Court may inquire into the overall process and whether such assurances, on their own terms, satisfy the Constitution. *See Khouzam*, 549 F.3d at 259 (finding that lack of individualized determination violated due process, notwithstanding diplomatic assurance).
>
> Blanket diplomatic assurances do not address DHS's obligation to

4

undertake an individualized assessment as to the sufficiency of the assurances, as required under the statutory and regulatory framework. *See* 8 C.F.R. § 1208.18(c)(1) ("The Secretary of State may forward to the Attorney General assurances that the Secretary has obtained from the government of a specific country that ***an*** alien would not be tortured there if ***the*** alien were removed to that country." (emphases added)); *see also Niz-Chavez v. Garland*, 593 U.S. 155, 161, 141 S.Ct. 1474, 209 L.Ed.2d 433 (2021) (examining the "ordinary meaning" of statutory text and finding that "[t]o an ordinary reader—both in 1996 and today—'a' notice would seem to suggest just that: 'a' single document").

Moreover, blanket assurances offer no protection against either torture by non-state actors or chain refoulement, whereby the third country proceeds to return an individual to his country of origin. *See, e.g.*, Compl. ¶¶ 68–69 (detailing domestic violence concerns that led to withholding of removal designation); Dkt. 8-2 ¶¶ 3–4, 7–8, 13 (same). Yet these circumstances can trigger protections under CAT no less than threats coming from state actors. 8 C.F.R. § 1208.18(a)(1); *see also Murillo Morocho v. Garland*, 80 F.4th 61, 71 (1st Cir. 2023) (vacating decision denying CAT protection where the Board of Immigration Appeals failed to properly consider risk of torture by non-state actors).

Even if such blanket assurances might, in some individual cases, satisfy due process, the March Guidance precludes any further review prior to removal. Dkt. 43-1 at 1–2 (providing noncitizens "will be removed without the need for further procedures"). There can be no right without a remedy. *Marbury v. Madison*, 5 U.S. 137, 163, 1 Cranch 137, 2 L.Ed. 60 (1803). Without meaningful review, the rights Congress has provided are little more than dead letter.

It simply cannot be, as Defendants contend, that the Government can "decide right now that someone who is in [ ] custody is getting deported to a third country, give them no notice and no opportunity to say, 'I will be killed the moment I arrive there,' and, as long as the [Government] doesn't already know that there's someone standing there waiting to shoot him, that's [ ] fine." *See* March 28, 2025 Tr. at 29:12–18 ("In short, yes."). Defendants' obligations under CAT and the Due Process Clause require more. Plaintiffs have demonstrated a likelihood of success on the merits.

*D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1142968, at *22 (D. Mass. Apr. 18, 2025), *opinion clarified,* 2025 WL 1323697 (D. Mass. May 7, 2025), and *opinion*

5

*clarified,* 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom.*, No. CV 25-10676-BEM, 2025 WL 1495517 (D. Mass. May 26, 2025) (emphasis in original) (footnotes omitted).

In *D.V.D.,* Judge Murphy certified a Rule 23(b)(2) class defined as follows:

> All individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Id.* at *11. The court subsequently clarified its preliminary injunction, explaining:

> All removals to third countries, *i.e.*, removal to a country other than the country or countries designated during immigration proceedings as the country of removal on the non-citizen's order of removal, *see* 8 U.S.C. § 1231(b)(1)(C), must be preceded by written notice to both the non-citizen and the non-citizen's counsel in a language the non-citizen can understand. Following notice, the individual must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal. If the non-citizen demonstrates "reasonable fear" of removal to the third country, Defendants must move to reopen the non-citizen's immigration proceedings. If the non-citizen is not found to have demonstrated a "reasonable fear" of removal to the third country, Defendants must provide a meaningful opportunity, and a minimum of fifteen days, for the non-citizen to seek reopening of their immigration proceedings.
>
> This Preliminary Injunction applies to the Defendants, including the Department of Homeland Security, as well as their officers, agents, servants, employees, attorneys, any person acting in concert, and any person with notice of the Preliminary Injunction. Fed. R. Civ. P. 65(d)(2). Accordingly, no Defendant may avoid their duty to follow the Preliminary Injunction by involving or ceding responsibility to any other person.

(D. Mass. Case No. 25-10676-BEM, Dkt. No. 118.) (record citations omitted).

On June 23, 2025, the Supreme Court stayed the *D.V.D.* preliminary injunction pending

6

disposition of the appeal pending before the United States Court of Appeals for the First Circuit, but left intact the certified class. *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2153 (2025).

As set forth more fully below, the Government opposes the Petition on its merits, asserting that revocation of Petitioner's release was lawful, he is being lawfully detained, and the Petition is premature (because Petitioner has not been held for an unreasonable period);[8] the Government also asserts that because Petitioner is a member of the *D.V.D.* non-opt out class, the court should dismiss or stay this action.

At the hearing, Petitioner agreed that he is a member of the *D.V.D.* class; however, in his Reply, Petitioner asserts that although he "does not challenge" his removal to a third county, he asks the court to order that he be afforded the "opportunity to seek . . . review" of his third country removal. (*Compare* ECF No. 1, ¶ 6, asserting that return of Petitioner to Iran or a third country without a hearing to determine whether he has a credible fear of return would violate his human rights and be a "cruel and unjustified" action of the Government, *with id.* at ¶ 7, asserting that Petitioner "challenges his detention as a violation of the [INA] and the Due Process Clause of the Fifth Amendment")  In his Reply, Petitioner clarifies that he challenges (and seeks relief from) his detention as untimely based on the statutory 90-day Removal Period (8 U.S.C. § 1231(a)(1)(A)), and the 6-month presumptively reasonable period of detention under 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis,* 533 U.S. 678 (2001). (ECF No. 18 at p. 9.)  Further, at the hearing, Petitioner (on inquiry of the court), asserted that he challenges revocation of his OSUP because he has violated no condition of his OSUP and because the Government has not identified or demonstrated any basis for the revocation, or that it had

---

[8] Relatedly, the Government urges that because it is legally entitled to remove Petitioner through the process it has undertaken, under 8 U.S.C. § 1252, the court lacks jurisdiction to stay the removal order.  Surely, the Government is correct that where a removal order is lawfully executed, the district courts lack jurisdiction to stay removal via injunctive or other relief.  Further, Petitioner does not challenge the removal order.

7

undertaken efforts to secure his return to a third country prior to revoking his OSUP. (Petitioner also challenges the revocation through the Immigration Court according to counsel.)

Importantly, at the hearing, Petitioner clarified that the only habeas issues presented for the court's consideration that do not fall within the ambit of his membership in the *D.V.D.* class are the revocation of his OSUP and his detention following same (which began July 1, 2025).

## II.   Analysis

### A.   *D.V.D Class Membership and Pre-Removal Hearing*

At the outset, as explained above, Petitioner agrees he is a member of the *D.V.D.* class; and although he contends it would be improper (and cruel) to remove him to a third country without affording him a "full hearing to determine his credible fear of return to a country that is currently an Islamic dictatorship" (ECF No. 1 ¶ 6), Petitioner does not seek such relief here. The court finds that Petitioner is a member of the *D.V.D.* class. Therefore, and because Petitioner does not ask this court for habeas relief in connection with his request for, or any entitlement to, a hearing to challenge his removal to any of the third countries identified in the Notices of Removal (Turkey, Pakistan, and Turkey), the court clarifies here that it neither opines on such relief, nor does its order purport bear on same, as matters pertaining to Petitioner's removal destination are more properly addressed by the District of Massachusetts. *See, I.V.I. v. Baker,* Civ. Case 25-1572-JKB, Memorandum and Order at ECF No. 17 (D. Md. May 27, 2025) (citing *Pacesetter Sys., Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94–95 (9th Cir. 1982); and *Horns v. Whalen,* 922 F.2d 835, *1–2, n.2 (4th Cir. 1991) (unpublished table decision)).

The court addresses below those bases of the Petition that fall outside those subject to the *D.V.D* class claims, and which are properly before the court regardless of such class membership.

### B. *Revocation of Petitioner's OSUP*

The court disagrees with Petitioner that the Government did not have proper grounds and authority to revoke his OSUP. Pursuant to 8 C.F.R. § 241.4(l)(2), the Government may:

> [R]evoke release and return to [ICE] custody an alien previously approved for release . . . in the exercise of discretion when, in the opinion of the revoking official:
> (i) The purposes of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(2)(i)–(iv).

The regulation permits the Government extraordinarily broad discretion to revoke an OSUP; and that discretion is expressly not limited to circumstances where a non-citizen violates the conditions of his OSUP. Further, the regulation does not compel the Government to demonstrate what facts or factors, if any, it based its decision to revoke under subsections (i), (iii), or (iv); nor does the regulation (or any other authority of which the court has been made aware) require the Government to demonstrate what, if any, steps it took to effect or secure removal prior to OSUP revocation. Here, the Revocation of Release expressly cites § 241.4 as the basis for the revocation of Petitioner's OSUP.

Moreover, per the Notice of Revocation of Release (ECF No. 14-3), the Government advised Petitioner that his changed circumstance is that ICE has determined he can be expeditiously removed pursuant to the order of removal and his case is under review with the Government of Iran for issuance of a travel document. (ECF 14-3.) Petitioner has provided no authority on which to base a conclusion that such a level or degree of notice is insufficient pursuant to 8 C.F.R. § 241.4(l) or any other applicable regulation. To the extent Petitioner wants to

9

challenge the basis for that, the proper remedy is the informal interview. (*See* Section II.B.1., *infra*.) For these reasons, the court declines to grant relief on this basis.[9]

### 1. *Informal Interview per 8 C.F.R. § 241.4(l)(1)* [10]

To the extent Petitioner's request for habeas relief is grounded in his assertion, set forth in his Reply, that he has not been afforded a post-revocation informal interview as described in the Notice of Revocation of Release, the court finds this an insufficient basis on which to grant the requested relief. While the court appreciates that the informal interview has not been done (or scheduled, apparently), release from detention is an overreach and not the appropriate cure.

Neither the Notice of Revocation of Release nor § 241.4(l)(1) sets forth a timeframe within which such an interview will take place – other than to assure that it will be done "promptly." Such imprecise language is too rickety a framework for the court to base a finding that 21 days with no interview is violative of Petitioner's rights to "promptness" such that the court should exercise its authority to order Petitioner released. Habeas is, of course, a proper vehicle to challenge detention, but such an administrative or procedural delay does not rise to the level of constitutional injury warranting the Great Writ. *See Teng v. Mukasey,* 516 F.3d 12, 17 (1st Cir.

---

[9] For the first time via his Reply, Petitioner asserts that his revocation of release is an *ultra vires* arrest in violation of the INA and the regulations at Title 8 of the Code of Federal Regulation, and, therefore, it amounts to a violation of the *Accardi* doctrine – thus entitling him to habeas relief. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (holding that federal agencies are obliged to comply with their policies, regulations, and procedures, and failure to do so may give rise to a right of action to challenge non-compliant agency action). For the reasons set forth throughout this opinion, based on the record before the court in the instant action, the court rejects this as a basis to grant Petitioner his requested habeas relief.

[10] The court observes the following: the Notice of Revocation of Release (ECF No. 14-3) advises Petitioner "you will be promptly afforded an informal interview at which you will be given an opportunity to respond to the reasons for revocation." Here, the Notice of Revocation of Release does not purport to be based on a violation of release conditions; rather, it cites "changed circumstances" and that ICE has determined Petitioner can be "expeditiously removed." (ECF No. 14-3.) The "informal interview" process set forth in § 241.4(l)(i), pertains only to instances where an OSUP is revoked on the basis of a "[v]iolation of conditions of release." The Government has not contended before this court (or in any notice to Petitioner) that it revoked Petitioner's OSUP on the basis of a violation of release conditions; nonetheless, in view of the assurances expressly contained in the Notice of Revocation of Release, the court considers Petitioner's complaint that he has not been afforded such an interview regardless of whether he would otherwise be entitled to same per § 241(4)(l)(1).

2008) (providing that "not every procedural misstep or difficulty raises anything like a constitutional difficulty")

### C. Untimeliness/Duration of Detention

Under the immigration statutes, "[e]xcept as otherwise provided . . ., when an alien is ordered removed, the Attorney General shall remove the alien . . . within a period of 90 days." 8 U.S.C. § 123l(a)(l)(A). That 90-day window, known as the "removal period," begins on "[t]he date the order of removal becomes administratively final." *Id.* § 1231(a)(l)(B)(i). Here, Petitioner's removal period expired on or about March 14, 2017.

Once the removal period closes, the INA sets forth two options for a non-citizen who was not removed during the removal period: an OSUP per § 1231(a)(3), or, for non-citizens who fall within three itemized categories, continued detention per § 1231(a)(6). Those three categories include, applicable here, non-citizens subject to certain removability grounds per § 1227(a)(1)(B) ("Any alien who is present in the United States in violation of this chapter or any other law of the United States, or whose nonimmigrant visa (or other documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable."). *Id.* § 1231(a)(6)(A).

On its face, the INA does not limit the period of post-removal detention to which the Government may subject a non-citizen to effectuate removal. Because the prospect of indeterminate detention raises grave and obvious constitutional concerns, the Supreme Court has held that such a non-citizen "may be held in confinement for a period reasonably necessary to bring about that alien's removal" and post-removal period detention under 8 U.S.C. § 1231(a)(6) for six months or less, inclusive of the removal period, is "presumptively reasonable" (and therefore does not, on its own, result on constitutional injury). *Zadvydas v. Davis,* 533 U.S. 678, 683, 701 (2001).

11

Petitioner argues that because the presumptively reasonable 6-month period expired on or about June 12, 2017, his current detention following revocation of his OSUP is constitutionally unreasonable. The court disagrees.[11]

*Zadvydas* involved resident aliens (in two different districts) who had been ordered removed and were held in continuous detention beyond their removal periods because the Government had been unable to secure their removal. Following a split among the Fifth and Ninth Circuits regarding habeas relief from post-removal period detention, the Court granted *certiorari*. Citing principally the "serious constitutional questions" raised by a statute permitting (on its face) indefinite detention, the Supreme Court set in place the above-described 6-month period of presumptive reasonableness. 533 U.S. at 682.

Here, there is no post-removal period continuation of detention; the record contains no indication that Petitioner was ever detained (before July 1, 2025). Instead, Petitioner was ordered removed subject to the Withholding of Removal to Iran and released on an OSUP. It strikes this court as an illogical, if not unreasonable, extension of *Zadvydas* to suggest that where the Government, as it did here, issues a non-citizen an OSUP, the 6-month post-removal period clock nonetheless starts to tick while the non-citizen is released. Given that the very reason the Supreme Court imposed the 6-month presumption was to eradicate the "serious constitutional questions" posed by potentially indeterminate detention, it seems nonsensical to disallow the Government from detaining Petitioner for any period following statutory revocation of his OSUP based on the rote calculation of days that have elapsed since his removal period expired. In other words, in Petitioner's case, the Government's issuance of an OSUP in lieu of detaining Petitioner upon

---

[11] In his Reply, Petitioner asserts that "[e]ight years of successful supervision creates a constitutionally protected presumption against re-detention." (ECF No. 18 at p. 15.) At the hearing, counsel for Petitioner explained that Petitioner bases this assertion on the holding in *Zadvydas v. Davis,* 533 U.S. 678 (2001). As explained more fully below, in the view of this court, that is neither the holding of *Zadvydas* nor a reasonable extrapolation therefrom.

issuance of the removal order effectively avoided the very concern the Supreme Court sought to cure in the first instance by holding the Government to account by imposing a 6-month guardrail on continued post-removal period detention.[12]

Petitioner further neglects to square such an extension of *Zadvydas* to circumstances not then before the Court with 1) the broad authority of the Executive under immigration law generally and, more specifically, to revoke release orders to remove a non-citizen; and 2) the general recognition that detention during deportation proceedings is constitutionally valid. *Demore v. Kim*, 538 U.S. 510, 523 (2003). It does not withstand scrutiny to suggest that upon securing the liberty afforded by an OSUP, after six months have passed, a non-citizen has effectively been granted a shield to guard himself from detention upon revocation while removal is in process.

Notwithstanding the court's foregoing analysis as to the merits of the Petition at this juncture, it is worthy of note that Petitioner is unequivocally entitled to due process of law in the context of his detention and removal proceedings. His detention may ripen into a meritorious habeas petition. It is not there yet.

## III. Conclusion and Order

For the foregoing reasons, it is this 22nd day of July 2025,

**ORDERED** that the Petition shall be, and is hereby, **DENIED WITHOUT PREJUDICE**; this order does not bear upon Petitioner's entitlement to seek relief pursuant to his membership in the *D.V.D.* class, and is without prejudice to the right of Petitioner to seek the same or similar relief adjudicated here; and further it is

**ORDERED** that the Government's Motion shall be, and is hereby, **DENIED AS MOOT**;

---

[12] The *Zadvydas* Court further held: "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

and further it is

**ORDERED** that the order at ECF No. 8 shall be, and is hereby **VACATED**; however, this vacatur of the order at ECF No. 8 is **STAYED** for ten (10) business days to allow Petitioner a reasonable opportunity to seek appellate review and to preserve and protect the jurisdiction of the Unites States Court of Appeals for the Fourth Circuit should Petitioner seek appellate review during this period; and during the ten (10) day stay, the Government shall not remove Petitioner from the United States.

Madam Clerk is directed to **CLOSE THIS CASE**.

/S/

_____
Julie R. Rubin
United States District Judge